**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHRISTOPHER JUSTIN EADS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>　　　　　Defendants. | 1:21-cv-17369-NLH-MJS<br><br>**OPINION** |

**APPEARANCES**:

ALAN S. NAAR[1]
MEREDITH CALANDRA SHERMAN
MITCHELL J. HORNER
GREENBAUM, ROWE, SMITH & DAVIS, LLP
99 WOOD AVENUE SOUTH
ISELIN, N.J. 08830

　　*On behalf of Plaintiff*

SAMANTHA R. D'AVERSA
UNITED STATES DEPARTMENT OF JUSTICE
MITCHELL H. COHEN BUILDING & UNITED STATES COURTHOUSE
401 MARKET STREET - P.O. BOX 2098
CAMDEN, N.J. 08101-2098

　　*On behalf of Defendants*

**HILLMAN**, **District Judge**

　　Pending before the Court is Plaintiff Christopher Justin

Eads's ("Plaintiff") motion for a temporary restraining order

---

[1] The pending application was made by Plaintiff while appearing pro se. The Court later appointed Plaintiff pro bono counsel, (ECF 33; ECF 41), who filed a reply brief to Defendants' opposition, (ECF 54). Counsel's services to the Court are commendable and appreciated.

("TRO") or protective order. (ECF 31). For the reasons set forth below, Plaintiff's motion will be denied.

I. **Background**

Plaintiff was incarcerated at Federal Correctional Institution ("FCI") Fairton in Fairton, New Jersey at the time of the filing of the complaint. (ECF 13 at ¶ 3). Defendant United States of America employed staff at FCI Fairton. (Id. at ¶ 4). Defendants HSA Celia Hansen, Warden Thomas Bergami, Lieutenant John Weiler, Counselor Clinton Freeman, and an unknown lieutenant ("Individual Defendants") have been employed at FCI Fairton during the time relevant to this action. (Id. at ¶ 5).

On September 22, 2021, Plaintiff filed the underlying complaint, (ECF 1), which was thereafter amended on March 10, 2022, (ECF 13). As amended, the complaint alleges ten counts consisting of alleged causes of action for negligence, medical malpractice, deliberate indifference to serious medical needs, and intentional infliction of emotional distress. (Id.). Plaintiff's allegations center on his exposure to, and contraction of, COVID-19; the difficulty he has faced while seeking medical treatment; and the abuse and threats directed toward him related to his continued requests for treatment. (Id.).

The pending motion, submitted as a letter addressed to

Chief Judge Renée Marie Bumb,[2] was received on February 10, 2023. (ECF 31). The letter alleges that on January 17, 2023, Plaintiff was called into the lieutenants' office where he was confronted regarding his lawsuits and subpoenas and that Weiler later handcuffed him, kicked him in the back, hit Plaintiff's head against the wall, spit in his face, and placed Plaintiff in the special housing unit ("SHU"). (Id. at 2-3). Plaintiff further alleges that Weiler told a SHU officer to "just kill" Plaintiff, his cellmate was instructed that he could move to a different cell if he first assaulted Plaintiff, he has been threatened with a transfer to a location at which he would be unable to contact the Court, and he has urinated blood and been unsuccessful in trying to secure medical treatment. (Id. at 3-5). Plaintiff requests release from SHU, medical attention, for the Bureau of Prisons to refrain from further retaliation, and for Weiler to be kept "a reasonably safe distance from [him] at all times." (Id. at 5).

    Plaintiff thereafter filed two supplements to the pending motion. (ECF 35; ECF 39). The first, received by the Court on March 9, 2023, included a declaration from Casey Carson,

---

[2] Plaintiff has submitted substantially similar motions under Docket No. 19-cv-18394, which has been assigned to the undersigned since its inception. On February 16, 2023, the instant matter was reassigned to the undersigned, (ECF 32), and an order appointing counsel was entered the next day, (ECF 33).

3

Plaintiff's cellmate from January 25, 2023 to February 28, 2023. (ECF 35; ECF 35-1 at ¶ 2). Carson attests that he has seen signs of Plaintiff's back injury – including bruising, reduced mobility, and Plaintiff urinating blood; saw and heard Plaintiff's attempts to receive medical attention; and personally witnessed Plaintiff being told by a unit manager that he would be kept in SHU for as long as possible. (ECF 35-1 at ¶¶ 3-9).

Plaintiff's second supplement, received on March 24, 2023, states that Plaintiff has been informed that he will remain in SHU indefinitely due to an investigation initiated by Weiler and that he faces transfer to a United States Penitentiary ("USP"). (ECF 39 at 1-2). Plaintiff submits that he continues to be retaliated against and would face danger if transferred to a USP and seeks, in addition to the relief sought in his original motion, an order mandating that he remain housed at FCI Fairton and be released from SHU. (Id. at 3-4).

Defendants filed a letter in opposition in response. (ECF 36). On April 25, 2023, the Court appointed counsel for Plaintiff, (ECF 41), who filed a reply, (ECF 54).

**II. Discussion**

   **A. Jurisdiction**

The Court has jurisdiction over Plaintiff's claims against the United States pursuant to the Federal Tort Claims Act

4

("FTCA"), 28 U.S.C. § 1346.  See 28 U.S.C. § 1331.[3]  It exercises supplemental jurisdiction over Plaintiff's claims against Individual Defendants.  See 28 U.S.C. § 1367.

**B. Preliminary Injunctions**

The Court interprets Plaintiff's request for a TRO or "some kind of emergency protective order" and an "emergency telephone conference between myself and the United States so that I may fully address the need for a TRO/Protective Order," (ECF 31 at 1), as a motion for a preliminary injunction, see Miller v. Ortiz, No. 17-1675, 2017 WL 1100880, at *1 (D.N.J. Mar. 22, 2017) (interpreting a "self-styled 'Emergency Motion for Temporary Order of Protection'" as a prisoner-civil-rights complaint and motion for a preliminary injunction); see also Robertson v. Samuels, 593 F. App'x 91, 92-93 (3d Cir. 2014) (finding that the prisoner's motion seeking medical care and transfer to a different facility was appropriately considered as a motion for a preliminary injunction).  Preliminary injunctions and TROs are governed by Federal Rule of Civil Procedure 65 and

---

[3] Plaintiff references alleged violation of his constitutional rights and cites Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 338 (1971) as a means of jurisdiction over Individual Defendants.  (ECF 13 at ¶ 2).  Plaintiff does not assert a cause of action expressly referencing a constitutional violation, but rather seeks declarations and compensatory and punitive damages related to alleged violations of his Eighth Amendment rights in the "Relief Requested" portion of his amended complaint.  (Id. at ¶¶ 113-16, 121-24).

5

the same general standards. See Fed. R. Civ. P. 65; Otsuka Pharm. Co., Ltd. v. Torrent Pharms. Ltd., Inc., 99 F. Supp. 3d 461, 475 (D.N.J. Apr. 16, 2015).

Courts determine whether a preliminary injunction should be issued by considering: "(1) whether the movant has a reasonable probability of success on the merits; (2) whether irreparable harm would result if the relief sought is not granted; (3) whether the relief would result in greater harm to the non-moving party, and (4) whether the relief is in the public interest." Amalgamated Transit Union Local 85 v. Port Auth. of Allegheny Cnty., 39 F.4th 95, 102-03 (3d Cir. 2022) (quoting Swartzwelder v. McNeilly, 297 F.3d 228, 234 (3d Cir. 2002)). The first two factors are "threshold[s]" and, after they have been satisfied, courts move on to the latter two prongs to determine whether, on the balance, the four factors favor injunctive relief. See Yates Real Estate, Inc. v. Plainfield Zoning Bd. of Adjustment, 404 F. Supp. 3d 889, 912 (D.N.J. July 31, 2019) (quoting Reilly v. City of Harrisburg, 858 F.3d 173, 176 (3d Cir. 2017)). "The 'failure to establish any element . . . renders a preliminary injunction inappropriate.'" Ferring Pharms., Inc. v. Watson Pharms., Inc., 765 F.3d 205, 210 (3d Cir. 2014) (omission in original) (quoting NutraSweet Co. v. Vit-Mar Enters., Inc., 176 F.3d 151, 153 (3d Cir. 1999)).

"Preliminary injunctive relief is an 'extraordinary remedy,

6

which should be granted only in limited circumstances,'" id. (quoting Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002)), and district courts possess considerable discretion in making such determinations, see McGee v. Scism, 463 F. App'x 61, 63 (3d Cir. 2012) ("We will affirm the District Court's denial of preliminary injunctive relief 'unless the court abused its discretion, committed an obvious error of law, or made a serious mistake in considering the proof.'" (quoting Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 90 (3d Cir. 1992))). "[A] request for injunctive relief in the prison context must be viewed with great caution because of the intractable problems of prison administration." Bass v. Carroll, 251 F. App'x 75, 76 (3d Cir. 2007) (citing Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995)).

## III. Analysis

Defendants, in their opposition, submit that the Court need not analyze Plaintiff's motion on the merits because Plaintiff's request is deficient. (ECF 36 at 3-4). Defendants highlight that the conduct at the center of Plaintiff's motion – an alleged assault, lack of medical treatment following the alleged assault, and placement in SHU – does not relate to conduct at the heart of his amended complaint – his contraction of COVID-19 and related complications – and is therefore an impermissible

7

basis for injunctive relief.  (Id. at 4).

The Court is persuaded by this argument.  Indeed, "there must be 'a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.'" Ball v. Famiglio, 396 F. App'x 836, 837 (3d Cir. 2010) (internal quotation marks omitted) (quoting Little v. Jones, 607 F.3d 1245, 1251 (10th Cir. 2010)).  At first glance, Plaintiff's amended complaint and motion may both be read as seeking medical treatment.  In fact, Plaintiff's reply brief seeks to link the allegations by stating "that the Defendants' conduct alleged in [Plaintiff's] Amended Complaint has continued and escalated to retaliation for the filing of his lawsuit . . . ."  (ECF 54 at 5).  However, the Court concludes that the factual predicates underlying these requests are distinct.  See Ball, 396 F. App'x at 838 (finding that most of the relief sought by the plaintiff's motion, relating to an alleged assault by a corrections officer, search of her cell, and confiscation of her property, was unrelated to the lack of medical care alleged in her complaint); see also Moneyham v. Ebbert, 723 F. App'x 89, 92 (3d Cir. 2018) (determining that the district court was correct to deny the plaintiff's injunction request to bar a non-party physician assistant – who examined him for a possible blood clot in February 2017 – from making medical decisions for him because it was unrelated to the allegations in his complaint claiming

8

that he was placed in tight restraints for a prolonged time in November 2014 and February 2015 and was thereafter denied medical care); Gonzalez v. Zickefoose, No. 12-3711, 2015 WL 6407832, at *2 (D.N.J. Oct. 22, 2015) (denying the plaintiff's request for a preliminary injunction, in part, because it related to medical conditions different from those alleged in the complaint).

    Here, Plaintiff's amended complaint centers on his exposure to, and contraction of, COVID-19 and related alleged denials of care and abuse that followed.  (ECF 13).  The pending motion alleges a retaliatory assault and placement in SHU and related failure to provide medical care.  (ECF 31).  The Court does not find the necessary relationship between Plaintiff's amended complaint and motion and thus holds that the motion must be denied.  See Ball, 396 F. App'x at 837.

    Even if the Court was to conclude that Plaintiff's amended complaint and motion are sufficiently related, it finds that application of the above-described four-prong analysis does not lead to granting the relief requested.  First, Plaintiff has not demonstrated a likelihood of success on the merits.  Plaintiff attributes his contraction of COVID-19 to prison staff's failure to abide by appropriate masking and social distancing, but – persuasively – similar allegations have not survived the dismissal stage within this Circuit.  See, e.g., Walker v.

9

United States, No. 3:21-cv-1881, 2022 WL 1472872, at *3 (M.D. Pa. May 10, 2022) (dismissing a prisoner's FTCA claim alleging negligence for failure to establish causation). The Court further notes that Plaintiff appears to indicate that he did receive treatment for his medical conditions, though not in the time, frequency, or manner Plaintiff believes was necessary. See Moneyham, 723 F. App'x at 92 (affirming denial of an injunction request for failure to demonstrate a likelihood of success on the merits in a deliberate-indifference claim alleging discontinuation of medication); Wesley v. Sec'y Pa. Dep't of Corr., 569 F. App'x 123, 125 (3d Cir. 2014) (finding that the likelihood of success on the merits was unclear when the plaintiff's allegations were premised, in part, on disagreement with treatment).

Second, Plaintiff also fails to demonstrate irreparable harm if relief is not granted. Between his initial motion and second supplement, Plaintiff has sought release from SHU, medical attention, for Defendants to refrain from further alleged retaliation, for Weiler to be kept away from him, and to remain at FCI Fairton. (ECF 31 at 5; ECF 39 at 3-4).

This Court has recognized the general "reluctant[ance] to accept inmate invitations to use preliminary injunctions as a means to judicially prescribe specific medical courses of treatment for inmates." See Conrad v. De Lasalle, No. 21-8462,

10

2021 WL 4593273, at *6 (D.N.J. Oct. 6, 2021) (quoting <u>Brown v. Wolf</u>, No. 16-1081, 2021 WL 3562473, at *5 (W.D. Pa. Aug. 12, 2021)).  There is no indication that the investigation that has placed Plaintiff in SHU is pretextual or that he is otherwise being actively retaliated against.  Further, it is not clear to the Court that, without immediate treatment, Plaintiff faces imminent and irreparable harm.  <u>See</u> <u>Wesley</u>, 569 F. App'x at 125 (affirming denial of a preliminary injunction, in part, due to a lack of clear showing of immediate and irreparable harm with respect to a state prisoner's medical treatment).  Indeed, the certification accompanying Plaintiff's reply brief indicates that Plaintiff has received treatment, though – again – not to the extent believed necessary.  (ECF 54-1 at ¶¶ 15, 18-19, 22).

To the extent that Plaintiff asks the Court to prevent his transfer to another institution, the Court notes that a prisoner is not entitled to placement in a particular prison, <u>see</u> <u>Ball v. Beard</u>, 396 F. App'x 826, 827 (3d Cir. 2010), and that it appears as though Plaintiff has already been transferred.[4]  Further, a

---

[4] Plaintiff filed a notice of change of address received by the Court on September 12, 2023 indicating that, as of August 28, 2023, he is being housed at FCI Butner in Butner, North Carolina.  (ECF 63).  This location is confirmed by a search of the "Find an Inmate" feature on the Bureau of Prisons website. The Court notes that to the extent that Plaintiff requires medical services, a federal medical center is located on the Butner Federal Correctional Complex.  The Court also notes that to the extent his application is premised on the claim that he

11

"district court has no power to dictate or impose any place of confinement for the imprisonment portion of the sentence." Curran v. Hollingsworth, No. 15-2770, 2015 WL 3875544, at *2 (D.N.J. June 23, 2015) (alteration in original) (quoting United States v. Serafini, 233 F.3d 758, 778 n. 23 (3d Cir. 2000)).

    Finally, the Court finds that the relief requested would cause considerable harm to Defendants by interfering with the means by which prisoners are housed and provided medical services. See id. (holding that an order precluding a prisoner's transfer would interfere with the administration of prison facilities). For similar reasons, granting the relief requested would also be contrary to the public interest. See id.; see also Boretsky v. Corzine, No. 08-2265, 2009 WL 1357233, at *5 (D.N.J. Jan. 16, 2009), report and recommendation adopted, 2009 WL 1312701 (D.N.J. May 11, 2009) ("The public interest is better served when prisons are run efficiently and operated by prison officials." (quoting Howard v. Skolnik, No. 2:08-CV-00728, 2008 WL 4568033, at *4 (D. Nev. Oct.8, 2008))).

    In sum, the Court holds that Plaintiff's motion fails to relate to the conduct alleged in his amended complaint and he otherwise fails to satisfy the standard for granting a TRO or

---

faces future retaliation from Weiler and other staff at FCI Fairton, his transfer moots such an allegation.

preliminary injunction. In so doing, the Court does not opine on the ultimate merits of Plaintiff's claims of abuse and retaliation. Rather, it concludes that relief would most appropriately be sought through the filing of a separate action or an amended complaint.[5]

## IV. Conclusion

For the reasons stated above, Plaintiff's motion for a TRO or protective order, (ECF 31), will be denied. An Order consistent with this Opinion will be entered.

Date: September 27, 2023      s/ Noel L. Hillman
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.

---

[5] The Court notes that a motion to amend is now pending before the Court. (ECF 46). Nothing in this opinion should be construed as prejudging or commenting on the merits of that motion.

13