UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

CHRISTOPHER JUSTIN EADS,

               Plaintiff,

     v.

UNITED STATES OF AMERICA, et al.,

               Defendants.

Civil No. 21-17369 (NLH/MJS)

## O P I N I O N  &  O R D E R

This matter comes before the Court on the motion for leave to file a second amended complaint ("Motion") brought by plaintiff Christopher Justin Eads ("Plaintiff"), an inmate previously incarcerated at FCI Fairton, a Bureau of Prisons ("BOP") facility in Fairton, New Jersey [ECF No. 46]. Defendant United States of America ("the Government") and individual defendants Health Services Administrator ("HSA") C. Hansen, Warden Bergami, Lieutenant Wieler,[1] and Counselor Freeman (collectively, "BOP defendants") filed their brief opposing the motion on July 3, 2023 [ECF No. 49], to which Plaintiff's reply was filed on August 31,

---

[1] Defendant Wieler's name is spelled "Weiler" in Plaintiff's Motion. Counsel shall confer further on the proper spelling of this name.

2023 [ECF No. 61]. The Court has considered the papers submitted in support of and in opposition to the motion and has decided the matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Plaintiff's motion is GRANTED IN PART AND DENIED IN PART.

## I. Background

The following facts are taken from Plaintiff's proposed second amended complaint [ECF No. 46-2], which the Court reads with all reasonable inferences drawn in Plaintiff's favor.[2]

Plaintiff's claims arise out of an interrelated series of events stemming from the BOP defendants' alleged failure to adhere to FCI Fairton's COVID-19 protocols, causing Plaintiff to contract COVID-19 in June 2020. ECF No. 46-2 ¶¶ 10-14. According to the complaint, after Plaintiff contracted COVID, he began suffering from chronic shortness of breath that made him "unable to breathe, lightheaded and dizzy," and he "repeatedly fainted" as a result. Id. ¶ 15. Although Plaintiff "submitted over a dozen requests for urgent medical treatment" over "a period of four months," the staff at FCI Fairton, including the BOP defendants, "repeatedly ignored

---

[2] Defendants' opposition to the motion is based on the argument that Plaintiff's proposed amendment is futile. See Yah'Torah v. Hicks, Civ. No. 15-5501, 2016 WL 6909103, at *3 (D.N.J. Nov. 23, 2016) ("In order to determine if a motion to amend is futile, the Court must accept as true all the facts alleged in the pleading and draw all reasonable inferences in favor of the plaintiff.").

[Plaintiff's] requests for urgent medical attention and did not provide the required medical care." Id. ¶¶ 16-17. Plaintiff was ultimately seen by medical staff in October 2020, at which time staff also diagnosed him with "several additional health issues, including high blood pressure, anemia, and blood sugar issues." Id. ¶ 20. Despite the diagnoses, Plaintiff did not receive treatment for any of these issues and he was not given high blood pressure medication until January 2021. Id. ¶ 21. Consequently, Plaintiff experienced "continued dizziness and fainting," and he sustained "head trauma" after a fainting spell caused him to hit his head. Id.

Following Plaintiff's head injury, BOP staff, including the BOP defendants, "threatened" Plaintiff and instructed him "not to seek further treatment." Id. ¶ 22. In particular, Plaintiff alleges that defendant Hansen "cornered [Plaintiff] in her office, trapped and would not let him leave, cursed at and verbally abused [Plaintiff]" for continuing to submit requests for care. Id. ¶ 23. She further promised that Plaintiff would not receive additional medical attention "[n]ow or ever." Id. Defendant Wieler also "reiterated" this threat and "physically assaulted [Plaintiff] causing him further head trauma." Id. ¶ 24. When Plaintiff sought care against their advice, he was transferred to the prison's "Special Housing Unit (SHU)." Id. ¶ 26.

3

Plaintiff, acting pro se, filed his initial complaint on September 22, 2021. ECF No. 1. Shortly thereafter, on October 6, 2021, Plaintiff moved to file an amended complaint. ECF No. 2. Plaintiff's first amended complaint was filed on March 10, 2022. ECF No. 13. On February 17, 2023, the Court entered an order sua sponte appointing pro bono counsel for Plaintiff. ECF No. 33. On April 25, 2023, the Court entered another order appointing Alan S. Naar, Esq., of the law firm Greenbaum, Rowe, Smith & Davis, LLP, to represent Plaintiff in this matter.[3] ECF No. 41. This Motion was filed on June 23, 2023. ECF No. 46. Defendants' opposition to the Motion was filed on July 3, 2023. ECF No. 49. Plaintiff's reply was filed on August 31, 2023. ECF No. 61.

As amended, Plaintiff's proposed complaint raises the following claims: negligence by and through all defendants (Count I); medical malpractice by and through the conduct of defendant Hansen and other medical staff (Count II); intentional infliction of emotional distress by and through the conduct of defendants Hansen and Wieler (Count III); deliberate indifference to Plaintiff's serious medical needs by defendants Hansen, Wieler, Bergami, and as-yet unidentified lieutenants (Count IV); cruel and unusual punishment and retaliation (Count V); and denial of access

---

[3] On April 26, 2023, Meredith C. Sherman, Esq., entered her appearance on behalf of Plaintiff and on May 31, 2023, Mitchell J. Horner, Esq., entered his appearance. ECF Nos. 42, 43.

to legal books and records (Count VI). ECF No. 46-2 ¶¶ 27-100.[4]
Plaintiff seeks declaratory judgment in his favor on all counts,
compensatory and punitive damages against all defendants, as well
as injunctive relief in the form of ordering Plaintiff removed
from the Special Housing Unit and prohibiting further retaliation
against Plaintiff. Id. ¶¶ 101-07.

Defendants do not oppose Plaintiff's motion for leave to amend
Counts I and II, but do oppose the amendment of Counts III through
VI on several grounds. ECF No. 49 at 1.[5] First, the defendants
argue that Plaintiff has failed to state a valid Bivens[6] claim
against the BOP defendants under Ziglar v. Abbasi, 582 U.S. 120
(2017) and Egbert v. Boule, 596 U.S. 482 (2022), and therefore has
no remedy for any of his constitutional claims.[7] ECF No. 49 at 10.
Second, the defendants argue that Plaintiff "has not plausibly

---

[4] In the first amended complaint, Plaintiff's claim of intentional
infliction of emotional distress named defendant Hansen only. ECF
No. 13 ¶ G. Furthermore, Counts V and VI are new additions proposed
by the Motion. ECF No. 46-2 ¶¶ 80-100.

[5] For the purpose of this opinion, the Court adopts the page numbers
assigned by each party to their respective briefs.

[6] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,
403 U.S. 388 (1971).

[7] Defendants characterize Plaintiff's claims regarding
retaliation, denial of access to legal materials/counsel, cruel
and unusual punishment, and deliberate indifference as falling
within this category. ECF No. 49 at 9.

pled that Defendant Hansen's conduct was extreme and outrageous," and Plaintiff has failed to exhaust available remedies regarding the conduct of Defendant Wieler as required by the Federal Tort Claims Act ("FTCA"). Id. at 1. Third, the defendants argue that punitive damages are not available to Plaintiff against the United States under the FTCA. Id. Fourth, the defendants argue that Plaintiff failed to exhaust available administrative remedies regarding his constitutional claims prior to bringing this suit, and therefore his claims are barred under the Prison Litigation Reform Act ("PLRA"). Id. at 1-2. Finally, the defendants argue that the BOP defendants are entitled to qualified immunity against Plaintiff's deliberate indifference claims, since Plaintiff has "failed to adequately plead a constitutional violation against them and Plaintiff has not alleged the violation of a clearly established right." Id. at 2.

## II. Discussion

Motions to amend pleadings are governed by Federal Rule of Civil Procedure 15(a). Where, as here, a party seeks to amend their complaint after responsive pleadings have been filed, the party may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 states that "[t]he court should freely give leave when justice so requires." Id. However, although "motions to amend pleadings should be

liberally granted," Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004), a court may deny the motion "where there is (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, (4) repeated failures to cure deficiencies, or (5) futility of amendment," Centennial Plaza Prop, LLC v. Trane U.S. Inc., Civ. No. 22-1262, 2023 WL 7403640, at *2 (D.N.J. Nov. 9, 2023) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). "The decision to grant a motion to amend a pleading rests in the sound discretion of the district court." Falco v. Zimmer, Civ. No. 13-1648, 2014 WL 12910938, at *1 (D.N.J. June 10, 2014) (citing Zenith Radio Corp. v. Hazeltine Rsch., Inc., 401 U.S. 321, 330 (1971)).

The defendants' arguments in opposition to the Motion center on the futility of the proposed amendments. "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or immediately subject to summary judgment for the defendant." Centennial Plaza Prop, LLC, 2023 WL 7403640, at *2 (quoting Am. Corp. Soc'y v. Valley Forge Ins. Co., 424 F. App'x 86, 90 (3d Cir. 2011)). "In determining whether a claim would be futile, 'the district court applies the same standard of legal sufficiency as applies under [Federal] Rule [of Civil Procedure] 12(b)(6).'" Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 243 (3d Cir. 2010) (alterations in original) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.

1997)). Thus, the party opposing the motion must demonstrate that the alleged facts, as amended, are insufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Yah'Torah, 2016 WL 6909103, at *2 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009); see also Rhulen v. LG Chem Am., Inc., Civ. No. 16-6924, 2018 WL 515851, at *2 (D.N.J. Jan. 23, 2018) (noting that party opposing the motion carries heavy burden in establishing futility of proposed amendment).

Plaintiff's Constitutional Claims

    As recently noted by the Third Circuit,

> In Ziglar v. Abbasi, [582 U.S. 120] (2017), the Supreme Court summarized the status of Bivens jurisprudence. The Court emphasized that, although the doctrine is a "settled," "fixed principle in the law" in certain spheres, "expanding the Bivens remedy is now a 'disfavored' judicial activity." The Court then prescribed a two-pronged inquiry for courts to follow in deciding whether to recognize a Bivens remedy. First, they must evaluate whether a case presents "a new Bivens context," meaning that it "is different in a meaningful way from previous Bivens cases decided by [the Supreme] Court." The Abbasi Court named three previous cases in which a Bivens remedy has been recognized: Bivens itself, in addition to . . . Davis [v. Passman, 442 U.S. 228 (1979)] and Carlson [v. Green, 446 U.S. 14 (1980)].

Shorter v. United States, 12 F.4th 366, 372 (3d Cir. 2021) (second alteration in original) (citations omitted) (quoting Ziglar, 582 U.S. at 134-35, 139).

The Supreme Court has only recognized an implied damages remedy in three previous cases. Egbert v. Boule, 596 U.S. at 490. First, in Bivens, the Supreme Court held "that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." Hernandez v. Mesa, 140 S. Ct. 735, 741 (citing Bivens, 403 U.S. at 388). Second, in Davis, the Supreme Court extended Bivens to recognize a cause of action under the Fifth Amendment for a former congressional staffer who was dismissed from employment on the basis of her sex. Davis, 442 U.S. at 248-49. And finally, in Carlson, the Supreme Court again extended Bivens to provide a cause of action under the Eighth Amendment against prison officials who failed to treat a federal prisoner's asthma, resulting in the prisoner's death. Carlson, 446 U.S. at 18-23. "These three cases – Bivens, Davis, and Carlson – represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." Ziglar, 582 U.S. at 131.

When a claim arises in a new Bivens context, "a Bivens remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" Egbert, 596 U.S. at 492 (quoting Ziglar, 582 U.S. at

136). A case presents a new Bivens context if it is "'meaningful[ly]' different from the three cases in which the Court has implied a damages action." Egbert, 596 U.S. at 492 (alteration in original) (quoting Ziglar, 582 U.S. at 139). "Meaningful differences" may include, but are not limited to, factors such as the ranks of the officers involved, the constitutional rights at issue, the nature of the challenged conduct, the extent of judicial guidance as to the appropriate conduct in a given situation, the legal mandate under which the officer was operating, or the presence of other factors that previous Bivens cases did not consider. Ziglar, 582 U.S. at 139-40. "If a case does not present a new Bivens context, the inquiry ends there, and a Bivens remedy is available." Berry v. Fitzgerald, Civ. No. 17-4904, 2023 WL 2424181, at *4 (D.N.J. Mar. 9, 2023) (quoting Shorter, 12 F.4th at 372).

Defendants assert that Plaintiff has not specified which constitutional rights he seeks to enforce in Counts IV, V, and VI of his proposed second amended complaint, but nevertheless contend that Plaintiff's claims "seemingly invoke the First, Fifth, and Eighth Amendments of the United States Constitution." ECF No. 49 at 12. Proceeding from that premise, Defendants argue that Plaintiff's proposed amendments would be futile because each of Plaintiff's constitutional claims presents a new Bivens context,

ECF No. 46

and no special circumstances exist that would permit judicial extension of a <u>Bivens</u> remedy for Plaintiff's claims. <u>Id.</u>

<u>Retaliation (Count V)</u>

Viewed in context, Plaintiff's retaliation claims are clearly raised under the Eighth Amendment.[8] Count V of the proposed second amended complaint is titled "Cruel and Unusual Punishment & Retaliation." ECF No. 46-2. Under that count, Plaintiff alleges he was "placed wrongfully in the SHU in retaliation for his requests that he be provided medical treatment." <u>Id.</u> ¶ 84. While in the SHU, Plaintiff allegedly has "little to no contact with the outside world" and "spend[s] approximately 23 hours per day in [his] cell." <u>Id.</u> ¶¶ 82-83. Prison officials have allegedly "relayed that [Plaintiff's] placement in [the SHU] is indefinite" despite the fact that "Plaintiff was never provided with any incident report, policy violation, or any other documentation as to why he was placed in the SHU." <u>Id.</u> ¶¶ 85-86. Plaintiff alleges that his "indefinite placement in isolation . . . continues to be mentally and physically damaging and cruel and unusual." <u>Id.</u> ¶ 87.

Moreover, Defendants have allegedly "escalated to retaliation for the filing of [this] lawsuit by assaulting Plaintiff." <u>Id.</u> ¶ 89. The proposed amendments describe several examples of

---

[8] In light of the Court's analysis, the Court finds it unnecessary to address Defendants' First and Fifth Amendment arguments.

Defendants' alleged retaliation against him for continuing to request medical care, including an incident in which defendant Wieler allegedly "placed Plaintiff's hands behind his back then proceeded to kick Plaintiff in his back, sending him crashing into the wall head[-]first." Id. ¶ 90. Plaintiff also alleges an incident in which "an unknown Lieutenant ha[d] provided [Plaintiff] with cleaning solution to drink" under the guise that it was "Kool-Aid," which caused Plaintiff to "become ill." Id. ¶ 94. Plaintiff asserts that these and other described incidents of "retaliation and attempted retaliation against Plaintiff is wrongful, cruel and unusual, and in violation of Plaintiff's constitutional rights." Id. ¶ 95.

Defendants argue that the proposed amendment to Count V is futile because "it is meaningfully different from Carlson, the Supreme Court's decision recognizing a Bivens remedy for an Eighth Amendment deliberate indifference claim." ECF No. 49 at 14. Specifically, Defendants note that Plaintiff's claims arise out of "his initial and alleged 'indefinite' placement in the SHU, the alleged assault by Defendant [Wieler], the threat of assault from other inmates, and his allegedly being tricked into drinking cleaning solution." Id. at 15. While Defendants concede that the allegations involve "serious misconduct," Defendants assert that "Carlson clearly did not involve its like." Id. As a result,

Plaintiff has failed to state a cause of action under Bivens with respect to Count V.

The Court agrees with Defendants in this regard. In Carlson, an inmate's estate alleged that prison officials failed to provide the inmate with competent medical care following an asthma attack, which ultimately resulted in the inmate's death. 446 U.S. at 16 n.1. In that regard, the constitutional violation recognized in Carlson arose out of deliberate indifference to a serious medical need. Here, however, Count V of the proposed second amended complaint alleges, essentially, a violation arising out of allegedly unconstitutional conditions of confinement. See Farmer v. Brennan, 511 U.S. 825, 832 (1994) (recognizing that the Eighth Amendment requires prison officials to "provide humane conditions of confinement"). The Supreme Court has not recognized a Bivens cause of action for conditions of confinement claims. Berry, 2023 WL 2424181, at *4-5. Accordingly, the Court finds that Plaintiff's retaliation claims present a new Bivens context. See Hernandez, 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized.").

Because Count V concerns a new Bivens context, the Court next considers "whether any 'special factors counsel[] hesitation' in extending a Bivens remedy to [this] context." Shorter, 12 F.4th at

13

372 (alteration in original) (quoting Ziglar, 582 U.S. at 135)). "There may be many such factors, but two are particularly weighty: the existence of an alternative remedial structure and separation-of-powers principles." Bistrian v. Levi, 912 F.3d 79, 90 (3d Cir. 2018).

Here, both factors would suggest that a Bivens remedy is unavailable as to Plaintiff's claim in Count V. First, "[t]he Supreme Court has held that 'a court may not fashion a Bivens remedy if Congress already has provided, or has authorized the Executive to provide, "an alternative remedial structure,"'" and has concluded "that the BOP's Administrative Remedy program satisfies this requirement." Berry, 2023 WL 2424181, at *6 (quoting Egbert, 596 U.S. at 493).

Separate from the availability of administrative remedies, the Third Circuit has already concluded in similar cases that separation-of-powers concerns likewise foreclose a Bivens remedy for this type of claim. In Mammana v. Barben, 856 F. App'x 411 (3d Cir. 2021) (Mammana II), prison staff punished an inmate for seeking medical care by placing him into administrative segregation, where the inmate was "deprived of his clothing, provided only 'paper like' coverings instead, denied bedding, and exposed to low cell temperatures and constant bright lighting for four days." Mammana v. Fed. Bureau of Prisons, 934 F.3d 368, 370-

14

374 (3d Cir. 2019) (footnote omitted) (Mammana I). The Third
Circuit found that the plaintiff's claims presented a new Bivens
context, and "significant separation-of-powers concerns" militated
against permitting a Bivens action to proceed. Mammana II, 856 F.
App'x at 415. The Third Circuit reasoned:

> Candidly, [Mammana] asks for a new implied cause of
> action to sue federal prison officials for
> unconstitutional conditions of confinement, a step never
> taken by the Supreme Court nor any circuit court.
> "Heeding the reasoning in Abbasi, we must be reluctant
> to 'establish whole categories of cases in which federal
> officers must defend against personal liability claims
> in the complex sphere of litigation.'" Bistrian, 912
> F.3d at 95 (quoting Abbasi, [582 U.S. at 136]).
> Recognizing such a broad new category of claims would
> step well into the lawmaking privilege delegated only to
> Congress, and well over the bounds of our limited
> constitutional power. . . .
>
> That is a special factor counseling hesitation to
> expand Bivens. Because we pause, we must "reject the
> request" to recognize this new Bivens context.

Id. at 415-16 (footnote omitted).

The Mammana II court's reasoning carries equal force here.
The Court further notes that Plaintiff's claims regarding his
placement in the SHU implicate "executive policies" regarding
inmate discipline, which "threatens a large burden to both the
judiciary and prison officials." Bistrian, 912 F.3d at 96
(declining to extend Bivens remedy to claim brought under First
Amendment for placement in SHU as retaliation for inmate's lodging
complaints about officers' conduct). "If there is even a single

'reason to pause before applying <u>Bivens</u> in a new context,' a court may not recognize a <u>Bivens</u> remedy." <u>Berry</u>, 2023 WL 2424181, at *5 (quoting <u>Egbert</u>, 596 U.S. at 492). Because there are many reasons to pause before extending <u>Bivens</u> in this case, the Court finds that Plaintiff's amendment as to Count V is futile, and will therefore DENY Plaintiff leave to amend as to that count.[9]

<u>Deliberate Indifference (Count IV)</u>

Defendants argue that Count IV of the proposed second amended complaint is futile because Plaintiff's deliberate indifference claim is "meaningfully different from <u>Carlson</u>." ECF No. 49 at 16. Defendants reason that "[u]nlike <u>Carlson</u>, Plaintiff does not allege to have suffered a life-threatening emergency that was ignored, despite clear medical guidance, and resulted in a fatality." <u>Id.</u> at 17. Moreover, "Plaintiff admits that he was treated by BOP medical staff for his complaints regarding

---

[9] To the extent that Plaintiff seeks any monetary damages regarding the alleged denial of access to legal materials (Count VI), the Court notes that the amendment is futile because it similarly presents a novel <u>Bivens</u> context. <u>See</u> <u>Mammana II</u>, 856 F. App'x at 415 (declining to recognize a <u>Bivens</u> cause of action for conditions of confinement); <u>see also</u> <u>Goldberg v. United States</u>, Civ. No. 17-6024, 2022 WL 833295, at *3 (D.N.J. Mar. 21, 2022) (declining to recognize <u>Bivens</u> cause of action under First and Fifth Amendments for denial of access to courts). To the extent that the proposed amended complaint seeks permanent injunctive relief ordering Plaintiff's release from the SHU, providing access to legal materials, and prohibiting further retaliation by Defendants as a non-monetary remedy [ECF No. 46-2 ¶ 107], that request is moot, as Plaintiff has since been transferred to another institution. ECF No. 63.

16

difficulty breathing, dizziness, and lightheadedness," that "he received blood tests, blood pressure readings, and was prescribed blood pressure medication," and "that the cut on his head was bandaged." Id.; ECF No. 46-2 ¶¶ 33-35, 38, 41, 44, 72. In response, Plaintiff points out that his claims "fall directly within the heart of recognized Bivens claims." ECF No. 61 at 14.

The Court will grant Plaintiff's Motion as to Count IV. The Court recognizes that there are some differences between Plaintiff's claims and those raised in Carlson, particularly, as Defendants argue, with respect to the severity of the medical conditions and ultimate injuries alleged. Furthermore, unlike in Carlson, Plaintiff apparently did ultimately receive treatment. However, the severity of Plaintiff's alleged medical conditions and whether he received treatment go to whether Plaintiff has adequately stated a violation of his Eighth Amendment rights; they have no bearing on the type of claim Plaintiff is raising, which is an Eighth Amendment claim based on the Defendants' purported deliberate indifference to his serious medical need. See Shorter, 12 F.4th at 373 (analyzing availability of Bivens remedy as separate issue from whether plaintiff adequately pled Eighth Amendment claim). In that regard, the Court does not find that the differences pointed out by Defendant are "meaningful" such that

Plaintiff's claims present a new Bivens context, and a Bivens remedy is, at least theoretically, available.

The question at this stage is not whether Plaintiff's claims will succeed, but whether, taking the allegations as true, Plaintiff has stated a plausible claim for relief. Centennial Plaza Props, LLC, 2023 WL 7403640, at *2. To establish an Eighth Amendment deliberate indifference claim, "an inmate must plead facts that show (1) []he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to h[is] health and safety, and (3) the official's deliberate indifference caused h[im] harm." Shorter, 12 F.4th at 374 (quoting Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012)). To show deliberate indifference, "'the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety' and disregarded that risk." Id. (quoting Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001)).

Plaintiff alleges that after contracting COVID-19, he experienced shortness of breath so severe that he experienced dizziness and repeated fainting, at one point losing consciousness in the shower and sustaining a significant head injury. ECF No. 46-2 ¶¶ 14-18, 70. He also alleges that he suffered from "extremely high" blood pressure, anemia, and blood sugar issues. Id. ¶ 35. He

has further alleged that the BOP defendants were aware of his fainting episodes, the head injury, and other conditions, id. ¶¶ 69-78, but instead of "attempting to provide or secure appropriate medical care," threatened to deny him all future care, physically assaulted him, and ignored his requests for care. Id. ¶¶ 64-65, 69-79. Finally, Plaintiff alleges that he continued to suffer worsening symptoms due to the delay in care, including an "inability to form words or complete coherent sentences" following the incident in the shower. Id. ¶ 74. Based on these allegations, the Court finds that leave to amend would not be futile. Therefore, the Court will GRANT Plaintiff leave to amend Count IV.

Plaintiff's FTCA Claims (Count III)

Defendants next argue that Plaintiff's proposed amendments to Count III, which states Plaintiff's claim for intentional infliction of emotional distress ("IIED"), are futile because: (1) Plaintiff has failed to state a claim for IIED by defendant Hansen; and (2) Plaintiff has "not met the FTCA's exhaustion requirements" with respect to conduct by defendant Wieler. ECF No. 49 at 25. Defendant also argues that to the extent Plaintiff seeks punitive damages for his tort claims under the FTCA, the amendment is futile "because such damages are barred." Id. at 27.

Under the FTCA, the federal government waives its immunity for injuries "caused by the negligent or wrongful act or omission

of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The government's liability for injuries under the FTCA is "'generally determined by reference to state law.'" In re Orthopedic Bone Screw Prod. Liab. Litig., 264 F.3d 344, 362 (3d Cir. 2001) (quoting Reo v. U.S. Postal Serv., 98 F.3d 73, 75 (3d Cir. 1996)); 28 U.S.C. ¶ 1346(b)(1). "To establish a claim for [IIED] under New Jersey law, a plaintiff must show that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the actions proximately caused emotional distress; and (4) the emotional distress was severe." Conte v. Goodwin, Civ. No. 19-8333, 2021 WL 141337, at *8 (D.N.J. Jan. 15, 2021) (citing Buckley v. Trenton Sav. Fund Soc'y, 544 A.2d 857, 863 (N.J. 1988)). "[U]nder New Jersey law, intentional infliction of emotional distress comprehends conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Weber v. Don Longo, Inc., Civ. No. 15-2406, 2018 WL 1135333, at *17 (D.N.J. Mar. 2, 2018) (alteration in original) (quoting Subbe-Hirte v. Baccigalupi, 94 F.3d 111, 114 (3d Cir. 1996)). "The standard is an objective one. The defendant's conduct must be 'sufficiently severe to "cause genuine and substantial emotional distress or

mental harm to average persons."'" <u>Ramirez v. SWSP Custody Officers</u>, Civ. No. 20-3887, 2023 WL 2523693, at *8 (D.N.J. Mar. 15, 2023) (quoting <u>Turner v. Wong</u>, 832 A.2d 340, 348 (N.J. Super. Ct. App. Div. 2003)).

Taking the facts in the light most favorable to Plaintiff as is required, <u>Yah'Torah</u>, 2016 WL 6909103, at *2, and given the early stage of litigation, the Court finds that Plaintiff has adequately pled his IIED claim to permit the amendment as to defendant Hansen. According to the proposed second amended complaint, defendant Hansen summoned Plaintiff to her office "for an unscheduled visit," then proceeded to "verbally abuse[] him," threaten to withhold "all future medical care" and "place him in the SHU" indefinitely if he continued requesting care. ECF No. 46-2 ¶¶ 48-50. As alleged, Hansen also effectively locked Plaintiff in her office, causing him to "suffer a panic attack, i.e., shaking, crying, hyperventilating, and having trouble breathing." <u>Id.</u> ¶ 52. Notwithstanding Plaintiff's symptoms, Hansen "continued to verbally abuse and threaten [Plaintiff] with punishment of placement into the SHU and transfer to another institution if he ever attempted to seek medical attention again." <u>Id.</u> ¶ 53.

An amendment to a pleading is only futile if it is "legally insufficient on its face." <u>Witherspoon v. Rent-A-Center, Inc.</u>, 173 F. Supp. 2d 239, 243 (D.N.J. 2001). Here, however, the Court finds

that the allegations against defendant Hansen support a plausible inference that defendant Hansen acted at least recklessly, because her actions were allegedly deliberate and it is highly probable that a person suffering from serious and continuing medical conditions will experience emotional distress when credibly threatened with the withholding of all future medical assistance. See Conte, 2021 WL 141337, at *8 ("A defendant acts recklessly when he [or she] acts in deliberate disregard of a high degree of probability that emotional distress will follow."). Indeed, defendant Hansen's conduct allegedly caused Plaintiff to suffer a panic attack, ECF No. 46-2 ¶¶ 51-52, 54. See Turner, 832 A.2d at 348 ("Severe emotional distress is a severe and disabling emotional or mental condition which may be generally recognized and diagnosed by trained professionals. The emotional distress must be sufficiently substantial to result in either physical illness or serious psychological sequelae." (citations omitted)). Moreover, not only did defendant Hansen allegedly cause the panic attack, but she also allegedly continued to threaten Plaintiff as he was "shaking, crying, hyperventilating, and having trouble breathing." ECF No. 46-2 ¶¶ 52-53.

Defendants contend that Plaintiff has failed to state a claim of IIED with respect to defendant Hansen's conduct because "these allegations do not sufficiently plead that [d]efendant Hansen's

conduct was extreme and outrageous." ECF No. 49 at 25. The Court finds that this argument has some merit; defendant Hansen's alleged conduct largely consists of threats, and IIED "'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,'" Taylor v. Metzger, 706 A.2d 685, 694 (N.J. 1998) (quoting 49 Prospect St. Tenants' Ass'n v. Sheva Gardens, Inc., 547 A.2d 1134, 1145 (N.J. Super. Ct. App. Div. 1988)). At the same time, Plaintiff's allegations include that when Plaintiff attempted to leave Hansen's office, she "physically forced the door out of [Plaintiff's] hand and shut it again, placing herself between him and the door and keeping him confined in her office." ECF No. 46-2 ¶ 51. She also allegedly continued to threaten Plaintiff even as he began hyperventilating and crying. To be sure, reasonable minds might differ as to whether Hansen's conduct ultimately meets the "extreme and outrageous" standard. However, at this stage of the litigation, "[t]he focus is not on '"whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."'" Stevenson v. Cnty. Sheriff's Off. of Monmouth Cnty., Civ. No. 13-5953, 2019 WL 117978, at *2 (D.N.J. Jan. 7, 2019) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007)). Therefore, the Court will permit Plaintiff's IIED claim with respect to defendant Hansen's conduct to proceed at this time. See Torres v. Monmouth Cnty. Corr.

Inst., Civ. No. 19-17704, 2021 WL 3773687, at *8 (D.N.J. Aug. 25, 2021) (permitting IIED claim to proceed against prison officer despite finding that the plaintiff's allegations that officer's conduct was extreme and outrageous were "borderline").

Plaintiff's IIED claim with respect to defendant Wieler's conduct presents a much easier question. "An FTCA action may not be instituted against the United States 'unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.'" Bakhtiari v. Spaulding, 779 F. App'x 129, 132 (3d Cir. 2019) (quoting 28 U.S.C. ¶ 2675(a)). The exhaustion requirement "is jurisdictional and cannot be waived." Id. (quoting Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003)); McNeil v. United States, 508 U.S. 106, 111 (1993). Consequently, "a district court may dismiss a claim brought under the FTCA for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) where the plaintiff has not exhausted his administrative remedies prior to filing suit." Bakhtiari v. Spaulding, No. 1:17-cv-00016, 2018 WL 5841664, at *8 (M.D. Pa. Nov. 8, 2018), aff'd, 779 F. App'x 129 (2019).

As Defendants point out, the underlying incident involving defendant Wieler allegedly occurred on January 17, 2023. ECF No. 46-2 ¶ 56. This Motion seeking to add Wieler's conduct as a basis

24

ECF No. 46

for liability was filed on June 23, 2023. ECF No. 46. The record shows that Plaintiff's administrative claim regarding defendant Wieler's alleged assault was not denied in writing until almost five months later, on November 13, 2023. ECF No. 66. As a result, even if the Court permitted the addition of defendant Wieler's conduct as a basis for Plaintiff's IIED claim, such a claim would be subject to dismissal for lack of jurisdiction to the extent it pertained to defendant Wieler. See Accolla v. U.S. Gov't, 369 F. App'x 408, 410 (3d Cir. 2010) (concluding that district court was without jurisdiction to rule on FTCA claim where FTCA action was filed in federal court prior to date of final disposition of administrative tort claim). Such would be the case notwithstanding the fact that Plaintiff's administrative claim has been denied — i.e., Plaintiff has exhausted his administrative remedies — since the filing of this Motion. Hoffenberg v. Provost, 154 F. App'x 307, 310 (3d Cir. 2005) (affirming dismissal of FTCA claim as unexhausted on the grounds that federal suit was filed while administrative claims were pending, and subsequent filing of an amended complaint following conclusion of administrative proceedings did not change the date the federal suit was instituted for FTCA purposes); see also Ibarra v. U.S.P. Allenwood, No. 1:06-CV-1160, 2007 WL 465537, at *4-5 (M.D. Pa. Feb. 9, 2007).

Punitive Damages

25

Defendants also argue that to the extent that Plaintiff seeks to amend any tort claim for punitive damages under the FTCA, such amendment is futile because the FTCA bars recovery of punitive damages [ECF No. 49 at 27]. 28 U.S.C. § 2674. Plaintiff responds that the FTCA's statutory bar on punitive damages "has no bearing on whether Plaintiff should be permitted to amend" his complaint. ECF No. 61 at 19.

Under the circumstances, the Court agrees with Plaintiff. Plaintiff's proposed second amended complaint requests "compensatory damages and punitive damages against [D]efendants." ECF No. 46-2 ¶ 106. Although punitive damages are not available against the United States to Plaintiff for his tort claims, they are available for his <u>Bivens</u> claims against the individual defendants. <u>See</u> <u>Carlson</u>, 446 U.S. at 22 (noting that punitive damages are available in <u>Bivens</u> suit despite being prohibited under FTCA). Given that Plaintiff did not specify which types of damages requests applied to which claims, the Court sees no reason to impute such specificity into the requests and deny Plaintiff's request to amend. Therefore, the Court will permit the proposed amendment at this time.

<u>PLRA Exhaustion</u>

Defendants next argue that Plaintiff's proposed amendments as to his constitutional claims are futile because Plaintiff

26

"abandoned each of his administrative grievances before seeking resolution up through all appellate levels within BOP," and therefore has failed to satisfy the PLRA's exhaustion requirement. ECF No. 49 at 27.[10] Defendants acknowledge that Plaintiff is not required to affirmatively plead exhaustion, but argue that because Plaintiff did plead it in the proposed second amended complaint [ECF No. 46-2 ¶ 9], the Court should deny Plaintiff's request to amend his complaint as futile. ECF No. 49 at 28. In response, Plaintiff argues that any decision on whether Plaintiff has satisfied the exhaustion requirement is premature at this stage of the litigation. ECF No. 61 at 7. In the alternative, Plaintiff contends that to the extent Plaintiff has failed to exhaust administrative remedies, it is because such remedies are effectively unavailable to him. Id. at 9.

"The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners seeking relief in federal court must first exhaust the administrative remedies available at the prison level." Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007) (quoting 42 U.S.C. § 1997e(a)). The statute requires "proper exhaustion of administrative remedies," even if monetary damages are not

---

[10] "[T]he administrative exhaustion requirements under the PLRA and the FTCA are separate and distinct," and "each must be independently followed in order for an inmate to maintain Bivens and negligence claims in the same action." West v. Shultz, No. 1:CV-12-1004, 2014 WL 1668093, at *9 (M.D. Pa. Apr. 24, 2014).

available through the administrative process. <u>Woodford v. Ngo</u>, 548 U.S. 81, 84 (2006). Moreover, the requirement is "a non-jurisdictional prerequisite to an inmate bringing suit and . . . constitutes a '"threshold issue that <u>courts</u> must address to determine whether litigation is being conducted in the right forum at the right time."'" <u>Rinaldi v. United States</u>, 904 F.3d 257, 265 (3d Cir. 2018) (quoting <u>Small v. Camden County</u>, 728 F.3d 265, 270 (3d Cir. 2013)). Consequently, "a court may not excuse a failure to exhaust, even to take [special] circumstances into account." <u>Ross v. Blake</u>, 578 U.S. 632, 639 (2016).

That said, "the PLRA requires exhaustion of only those remedies that are 'available.'" <u>Bakhtiari</u>, 779 F. App'x at 132. The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief": (1) where prison officers are "unable or consistently unwilling to provide any relief to aggrieved inmates," making the procedure functionally a "dead end,"; (2) when the procedures are "so confusing that . . . no reasonable prisoner can use them,"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." <u>Ross</u>, 578 U.S. at 643-44. "Failure to exhaust is an affirmative

28

defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." <u>Small</u>, 728 F.3d at 268.

Applying these principles, the Court finds that it would be inappropriate to address the exhaustion issue at this time. First, ruling on this issue at this point necessarily involves resolving issues of disputed fact, which is not properly undertaken in deciding a motion to amend a complaint. On the contrary, in determining whether a proposed amendment is futile, a court "accept[s] as true all the facts alleged" by the plaintiff and gives the plaintiff the benefit of all reasonable inferences. <u>Stevenson</u>, 2019 WL 117978, at *2. Here, the proposed second amended complaint alleges that "Plaintiff has fully exhausted both informal and formal resolution through the administrative remedy and appeals programs of the Bureau of Prisons," to no avail. ECF No. 46-2 ¶ 9. Plaintiff also alleges that he "hand delivered" multiple "Administrative Remedy request[s]" to defendant Bergami, the warden at FCI Fairton. <u>Id.</u> ¶¶ 69, 72. The first request was allegedly delivered on January 28, 2021, the second was delivered on February 1, 2021. <u>Id.</u> Plaintiff allegedly filed a third administrative remedy request on February 8, 2021, which defendant

Bergami apparently received.[11] Each of these requests allegedly
went unanswered. Id. ¶ 79. Based on these facts, it is not clear
that Plaintiff's proposed amendment would be futile based on a
supposed failure to exhaust administrative remedies. See Alston v.
Wenerowicz, 167 F. Supp. 3d 714, 718 (E.D. Pa. 2016) ("A plaintiff
only fails to state a claim for relief [based on] failure to
exhaust when non-exhaustion is apparent from the face of the
complaint."). Therefore, denying Plaintiff leave to amend his
constitutional claims on this ground is improper. See Harrison
Beverage Co. v. Dribeck Imps., Inc., 133 F.R.D. 463, 468 (D.N.J.
1990) ("'If a proposed amendment is not clearly futile, then denial
of leave to amend is improper.'" (quoting 6 Wright, Miller & Kane,
Fed. Prac. & Proc. § 1487 at 637-42 (2d ed. 1990))).

    Second, while Defendants have submitted a wealth of documents
to support their arguments,[12] in considering a motion to amend
pleadings, a court "considers only the pleading, exhibits attached
to the pleading, matters of public record, and undisputedly

---

[11] Plaintiff alleges that after he filed the February 8, 2021
request, defendant Bergami told him to "seek medical attention
through the medical department" rather than by filing
administrative grievances. ECF No. 46-2 ¶ 75.

[12] To support their exhaustion arguments, Defendants have included
the sworn declarations of Eva Baker-Dykstra, a paralegal employed
by the BOP; and Robert Jensen, a BOP attorney. ECF Nos. 49-1, 49-
2. The declarations are accompanied by what appears to be a full
recounting of every administrative grievance Plaintiff has ever
filed dating back as far as 2013. See ECF No. 49-1, Exhibit C.

authentic documents if the party's claims are based upon the same."

Love v. Does, Civ. No. 17-1036, 2020 WL 5760447, at *3 (D.N.J. Sept. 28, 2020) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). The documents submitted by Defendants are not "integral to or explicitly relied upon in the complaint," and Plaintiff's complaint is not "'based on the document[s]'"; therefore, it would be inappropriate to consider them in deciding this Motion. See Mills v. Ethicon, Inc., 406 F. Supp. 3d 363, 372 (D.N.J. 2019) (quoting In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999)) (stating that courts need not consider such documents in deciding motion to dismiss; cf. Alston, 167 F. Supp. 3d at 718 (finding that court could consider the actual grievance filed by the inmate-plaintiff, which defendant attached to motion to dismiss, where plaintiff specifically referenced the grievance by number in pleading satisfaction of exhaustion requirement). In any event, Plaintiff has presented sworn certifications denying the availability of the administrative remedy process and the grounds for the BOP's rejections of his requests. ECF Nos. 61-1, 61-2. Although "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury," the Third Circuit has made clear that a court "must at least provide the parties with an opportunity to

submit materials relevant to exhaustion that are not already before it." Paladino v. Newsome, 885 F.3d 203, 211 (3d Cir. 2018) (quoting Small, 728 F.3d at 271). As a result, even if the Court did consider the parties' extraneous submissions, the Court would be without authority to deny the Motion on exhaustion grounds at this time.

Qualified Immunity

Finally, Defendants argue that even if the Court extended a Bivens remedy to Plaintiff's constitutional claims, amendment would be futile because the BOP defendants are entitled to qualified immunity. ECF No. 49 at 29. Because the Court has already determined that amendment would be futile as to Counts V and VI, the Court focuses its analysis on whether Defendants are entitled to the defense of qualified immunity against Plaintiff's claim that they were deliberately indifferent to his serious medical need.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Peroza-Benitez v. Smith, 994 F.3d 157, 165 (3d Cir. 2021) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015) (per curiam)). In assessing whether an officer is entitled to qualified immunity, courts employ a two-prong test, "the first prong being whether the facts, as viewed in the light

most favorable to the plaintiff, show the violation of a legal right, and the second being whether that right was clearly established." <u>Mack v. Yost</u>, 63 F.4th 211, 227 (3d Cir. 2023).

At this stage of the litigation, the Court finds that it would be premature to decide the availability of the defense of qualified immunity. The Court has already found that, for purposes of this Motion, Plaintiff has adequately pled an Eighth Amendment violation. Therefore, whether the BOP defendants are entitled to qualified immunity hinges on whether, under the circumstances, it was "sufficiently clear that every reasonable official would have understood that what he [or she was] doing violate[d] that right." <u>Mullenix</u>, 577 U.S. at 11 (quoting <u>Reichle v. Howards</u>, 566 U.S. 658, 664 (2012)). In answering this question, "[t]he dispositive question is 'whether the violative nature of <u>particular</u> conduct is clearly established.'" <u>Id.</u> at 12 (quoting <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 742 (2011)). This analysis is necessarily incredibly fact-specific, <u>Peroza-Benitez</u>, 994 F.3d at 165 (noting that analysis under second prong is framed "in light of the specific context of the case, not as a broad general proposition"), making it unsuitable for decision based on the limited record in the context of a motion to amend, <u>see</u> <u>Stevenson</u>, 2019 WL 117978, at *2 (noting that in determining futility of amendment, the court "considers only the pleading, exhibits attached to the pleading,

ECF No. 46

matters of public record, and undisputedly authentic documents if

the party's claims are based upon same"). Therefore, the Court

will not find that the defense of qualified immunity renders

Plaintiff's amendment futile at this time.

## III. Conclusion

For the foregoing reasons, Plaintiff's Motion to Amend the

Complaint is **GRANTED in part, and DENIED in part.** Plaintiff shall

file a second amended complaint consistent with the directives of

this Opinion and Order within 14 days.


            s/ Matthew J. Skahill
            MATTHEW J. SKAHILL
            United States Magistrate Judge

cc:  Hon. Noel L. Hillman
     Senior United States District Judge

34